UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOBBY TUCKER,

                Plaintiff,

v.

SEATTLE HOUSING AUTHORITY, et al.,

                Defendant.

Case No. C13-1566-BAT

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND STRIKING AS MOOT STIPULATED MOTION TO EXTEND TIME**

## INTRODUCTION

Defendants[1] have filed two motions for summary judgment. Seattle Housing Authority ("SHA") seeks a ruling that, as a matter of law: (1) Mr. Tucker failed to provide mandatory pre-suit notice of his constructive eviction claim; (2) Mr. Tucker has failed to raise an issue of fact in support of his constructive eviction claim; (3) Mr. Tucker failed to adequately plead *Monell* liability; and (4) Mr. Tucker's 42 U.S.C. § 1983 claims fail for independent reasons. Dkt. 47. Individually named defendants James Fearn and Linda Brosell ("Fearn and Brosell") seek a ruling as a matter of law that: (1) Mr. Tucker failed to provide mandatory pre-suit notice of his §

---

[1] The Court refers to all defendants collectively as "defendants."

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND STRIKING AS MOOT STIPULATED MOTION TO EXTEND TIME - 1

1983 claims and those claims are consequently time-barred; (2) Mr. Tucker's § 1983 claims should be dismissed; and (3) Mr. Tucker was never entitled to occupy his Section 8 housing rental because he was not qualified for a two-bedroom unit. Dkt. 42. Mr. Tucker has also filed a cross-motion for summary judgment. Dkt. 50. Defendants oppose the motion as untimely. Dkt. 53, Dkt. 54. Having considered the parties' submissions and determined that oral argument is not necessary for disposition of these motions, and for the reasons discussed below, the Court **GRANTS** defendants' motions, Dkt. 42.; Dkt. 47, and **STRIKES** Mr. Tucker's cross-motion (Dkt. 50). The Court **STRIKES** as moot the parties' Stipulated Order to Extend Time for SHA to Serve its Pretrial Statement, Dkt. 61.

## BACKGROUND

The relevant facts are largely undisputed. On September 10, 2010, Mr. Tucker completed a Housing Choice Voucher Program Application for a project-based Section 8 unit. Dkt. 17 at 3. Mr. Tucker signed an Apartment Rental Agreement for a project-based housing unit at the Lam Bow Apartments on October 7, 2010, for a lease term beginning October 7, 2010 and ending September 30, 2011. Dkt. 51-1 at 2. The Lam Bow Apartments are owned and operated by defendant Seattle Housing Authority ("SHA"), a local public housing authority funded through the Department of Housing and Urban Development ("HUD"). Dkt. 50 at 2. Pursuant to the lease agreement, the Lam Bow apartment rented for $948.00 per month; the lease also required a $400.00 security deposit and a $200.00 nonrefundable fee. Dkt. 51-1 at 2-3. Mr. Tucker was responsible for $200.00 of the monthly rent. Dkt. 45 at 3. Upon move-in, Mr. Tucker paid $200.00 toward his obligations and arranged for assistance from Neighborhood House (a local non-profit organization) to pay the security deposit. Dkt. 51 at 2; *see also* Dkt. 41

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 2

at 22-23. Defendants contend Mr. Tucker never paid the remainder of the amounts due and owing on the Lam Bow unit. Dkt. 45 at 6-7; Dkt. 60 at 3-4. Mr. Tucker inspected the Lam Bow unit on October 7, 2010, and completed an inventory and inspection form. Dkt. 39 at 2, 26. The form indicated the carpets needed replacing and the overall condition of the unit was "fair." *Id.* at 26. Mr. Tucker moved in to the unit on October 18, 2010. Dkt. 51 at 2.

On October 21, 2010, a section of the unit's kitchen ceiling collapsed, causing damage to the kitchen and carpeting. Dkt. 17 at 5. On October 22, 2010, Mr. Tucker completed a second inventory and inspection form, wherein he documented that the unit was in poor condition, the kitchen ceiling had fallen, there was water on the floor with an associated "stink," and the carpet was wet. Dkt. 39 at 34. SHA moved Mr. Tucker and his daughter to temporary housing at the Longfellow Creek Apartments, a separate SHA complex.[2] Dkt. 17 at 5. The Longfellow Creek apartments are not project-based units. *Id.* Defendants aver that by October 28, 2010, SHA repaired a leak in the kitchen in Mr. Tucker's Lam Bow unit, shampooed the carpets, and cleaned the kitchen counters and floors. Dkt. 45 at 3; Dkt. 39 at 4. Shurvon Wright, a Property Manager at SHA, inspected the unit on October 25, 2010, and determined it was "rent-ready." Dkt. 39 at 4. Mr. Tucker avers that after Ms. Wright informed him the unit was ready, he inspected it and determined the ceiling repair had not been completed, had debris and dirty water in it, and smelled like mold. Dkt. 51 at 2.

Defendants contend that on October 26, 2010, Mr. Tucker informed Ms. Wright he did not want to return to the Lam Bow unit and he wanted to remain at the Longfellow Creek unit.

---

[2] While the parties do not dispute that when Mr. Tucker was initially relocated to the Longfellow Creek apartment it was for temporary purposes only, they may dispute whether Mr. Tucker was entitled to remain at the Longfellow Creek unit after defendants informed Mr. Tucker that repairs on his Lam Bow unit had been completed.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 3

1  Dkt. 39 at 4.  By letter dated October 26, 2010, Ms. Wright informed Mr. Tucker that the Lam

2  Bow unit had been repaired and cleaned and would be ready for occupancy the following day.

3  Dkt. 39 at 43.  The letter also stated that Mr. Tucker could terminate his lease, but that his

4  subsidized rent was tied to the Lam Bow Apartments.  *Id.*  The letter requested that, if Mr.

5  Tucker chose to vacate his unit, he should inform Ms. Wright of that intent by the next day,

6  October 27, 2010.  *Id.*

7  By letter dated October 29, 2010, SHA informed Mr. Tucker that the Longfellow Creek unit

8  Mr. Tucker was occupying did not accept "mobile" housing vouchers, that his Lam Bow voucher

9  would not transfer to the Longfellow Creek unit, and that the monthly rent for the Longfellow

10  Creek unit was $750.00.  Dkt. 51-3 at 2.  The letter stated Mr. Tucker would need to inform the

11  Longfellow Creek leasing office whether he intended to lease that unit for $750; in the

12  alternative, he could present a valid voucher for the unit or move out.  *Id.*  Mr. Tucker avers that

13  after Ms. Wright informed him that repairs to the Lam Bow unit were complete, he went to

14  inspect the apartment and found that the ceiling repair had not been completed, and there was

15  still debris and dirty water in the apartment.  Dkt. 51 at 2.  Mr. Tucker returned his keys to the

16  Lam Bow unit that same day.[3]  Mr. Tucker continued to remain at the Longfellow Creek

17  apartment but did not sign a lease for that unit and did not pay any portion of the rent for that

18  unit.  Dkt. 45 at 4.

19  By notice dated November 2, 2010, Mr. Tucker was informed he had three days to vacate the

20  Longfellow Creek unit.  Dkt. 51-6 at 2-3.  In early November, Mr. Tucker contacted Jim Metz

---

[3] The Court notes that although Mr. Tucker's declaration states he does not recall which day he returned his keys to the Lam Bow unit, Mr. Tucker indicated he returned his keys on October 29, 2010 in response to requests for admission.  Dkt. 41 at 24.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 4

1  with the City of Seattle Department of Planning and Development ("DPD"), and showed him

2  video footage of the Lam Bow unit's collapsed ceiling.  Dkt. 52-4 at 2-12.  DPD refused to

3  inspect the Lam Bow unit for mold unless Mr. Tucker was occupying the unit.  *Id*. at 5.  On

4  November 8, 2010, Terry Frye, SHA's asbestos and mold remediation worker, inspected the

5  Lam Bow unit and found no mold or mold scent.  Dkt. 39 at 47; Dkt. 45 at 66-67.  That same

6  day, Ms. Brosell forwarded Mr. Frye's report and delivered photographs of the unit to Mr. Metz.

7  Dkt. 52-6 at 3.

8      By letter dated November 10, 2010, Mr. Tucker informed SHA he did not want to return to

9  the Lam Bow apartment because he did not want to expose himself or his daughter to mold.  Dkt.

10 51-7.  The letter further requested that SHA permit Mr. Tucker and his daughter to live in a unit

11 at the Longfellow Creek apartments.  *Id*.  Via email on November 16, 2010, Ms. Wright

12 informed Ms. Brosell and other SHA staff "[w]e have moved [Mr. Tucker] out of Lambow and

13 are now showing A206!"  Dkt. 52-8 at 3.  Ms. Brosell replied that there was no obligation to

14 show Mr. Tucker any additional units, stating "Please DO NOT RENT ANY UNIT TO HIM—

15 including the original unit he was in unit [*sic*] unless you work with legal and he signs a release

16 of any and all claims."  Dkt. 52-8 at 2-3.  On or around that time, SHA released the Lam Bow

17 unit to be leased by a new tenant.  Dkt. 39 at 5; Dkt. 45 at 6.  Mr. Tucker was subsequently

18 evicted from the unit he occupied at Longfellow Creek.  Dkt. 51 at 3.

19 **DISCUSSION**

20 **A.  Summary Judgment Standard**

21     Summary judgment should be granted if the record, taken as a whole, shows there is no

22 genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

23

law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *See Celotex v. Cattret*, 477 U.S. 317, 323 (1986).

The evidence is viewed and reasonable inferences are drawn in the light most favorable to the nonmoving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). Nevertheless, the opposing party may not rest solely upon the pleadings' allegations or denials, but must present significant probative evidence that is sufficient to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248-50. The opposing party must offer more than a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252.

The Court may consider any unopposed assertion of fact to be an undisputed fact for purposes of the motion. Fed. R. Civ. P. 56(e)(2). If a party fails to properly address another party's assertion of fact, the Court may "grant summary judgment if the motion and supporting

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 6

1  materials—including the facts considered undisputed—show that the movant is entitled to it."

2  Fed. R. Civ. P. 56(e)(3).

**B.    Pre-Suit Notice Pursuant to RCW 4.96.020**

As a threshold matter, defendants assert Mr. Tucker's claims should be dismissed because he failed to comply with RCW 4.96.020. Dkt. 42 at 10 (regarding Mr. Tucker's § 1983 claims); Dkt. 47 at 16 (regarding Mr. Tucker's constructive eviction claim). That statute requires that a party provide administrative notice of its "claim" for damages arising out of tortuous conduct at least sixty days before filing a formal action. RCW 4.96.020. The statute also functions as a tolling mechanism. *See id*. There is no dispute Mr. Tucker failed to provide such pre-suit notice. The purely legal issue before the Court is whether RCW 4.96.020 applies in this matter.[4]

Federal courts borrow statutes of limitation and tolling statutes from state law in § 1983 actions. *See Owens v. Okure,* 488 U.S. 235, 250 (1989); *Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *see also Harding v. Galceran*, 889 F.2d 906, 907 (9th Cir. 1989) ("We look to state law to determine the application of tolling doctrines."). However, state law may not impose additional prerequisites upon § 1983 suits; accordingly, state pre-suit notice requirements are not applicable in federal § 1983 actions (and are preempted in § 1983 actions in state court). *Felder v. Casey*, 487 U.S. 131, 140 (1988); *see also Wright v. Terrell*, 162 Wash.2d 192, 196, 170 P.3d 570 (2007) (*citing Felder*, 487 U.S. at 138). The Court is satisfied that Mr. Tucker's § 1983 action was properly filed, and **DENIES** Fearn and Brosell's motion for summary judgment for lack of pre-suit notice on Mr. Tucker's § 1983 claims.

---

[4] The Court defers to no party in answering legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999) (*overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006)).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 7

SHA argues Mr. Tucker's second cause of action for constructive eviction was improperly filed for failure to comply with the pre-suit notice requirements under RCW 4.96.020. Dkt. 47 at 16. The parties agree that RCW 4.96.020 applies to claims for damages arising out of alleged tortuous conduct of a local governmental entity or its employees. *Id.*, see also Dkt. 50 at 9. Mr. Tucker contends that pre-suit notice is not required for constructive eviction claims because the claim sounds in contract. Dkt. 50 at 9. SHA's reply concedes that pre-suit notice applies to alleged torts, but argues that Mr. Tucker's claims should be dismissed "to the extent [he] claim[s] damages from tortuous conduct or damages beyond those available for breach of contract." Dkt. 53 at 4. The Court need not resolve the question about the extent to which Mr. Tucker's claims for damages extend beyond those available for breach of contract because, as the Court discusses immediately below, the Court **GRANTS** SHA's motion for summary judgment on Mr. Tucker's constructive eviction claim.

**C.    Constructive Eviction**

Mr. Tucker's constructive eviction claim alleges that SHA breached its obligations under the lease, and breached the implied warranty of habitability and covenant of quiet enjoyment when (1) the ceiling in the Lam Bow unit collapsed; and (2) SHA "refused to take further action to restore the unit to habitability" after Mr. Tucker notified SHA that the unit's mold infestation persisted despite SHA's ceiling repairs. Dkt. 17 at 10. SHA argues Mr. Tucker has not offered evidence sufficient to raise an issue of fact as to "whether the condition of the unit after the repair was dangerously unsanitary or mold infested." Dkt. 47 at 14. In response, Mr. Tucker contends genuine issues of fact exist as to the condition of the Lam Bow unit because "[o]ne of the main factual disputes in this case is the assertion by Plaintiffs that the Lam Bow unit was not

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 8

in fact repaired, which was the stated reason for Mr. Tucker's refusal to live there." Dkt. 50 at 18 (*citing* Mr. Tucker's November 10, 2010 letter to SHA). It is unclear whether by this statement Mr. Tucker intends to abandon his allegations as to mold.

SHA presents evidence that it repaired a leak in the kitchen, cleaned the carpets, and cleaned the counters and floors between October 22, 2010, and October 28, 2010, and that on November 8, 2010, SHA's asbestos and mold remediation worker inspected the Lam Bow unit and found no mold or mold scent. Mr. Tucker presents evidence that, on or around November 3, 2010, he showed the Department of Planning and Development's Jim Metz a video of the Lam Bow unit depicting a collapsed ceiling and moisture damage. Mr. Metz testified that the video depicted the Lam Bow unit before repairs were complete. Dkt. 52-4 at 11. On November 8, 2010, Ms. Brosell forwarded to Mr. Metz Mr. Frye's report indicating there were no mold issues, and also delivered photographs of the repaired Lam Bow unit. At this point, Mr. Metz determined the unit was in rental condition. Dkt. 52-4 at 8.

Mr. Tucker has failed to offer evidence that the unit was still compromised *after* SHA informed him the repairs were complete. None of the evidence Mr. Tucker provides indicates he in fact returned to the Lam Bow unit after he was informed repairs were complete, raising serious questions as to whether he can show that the ceiling had not been repaired or that the unit continued to present mold danger. Mr. Tucker does not argue that the video he provided Mr. Metz was recorded after SHA informed him it had completed the necessary repairs. Nowhere in Mr. Tucker's November 10, 2010 letter does he state he returned to inspect the unit after he was informed the unit was in rent-ready condition. The letter also says nothing about a failure to complete ceiling repairs; the primary complaint is mold. Mr. Tucker's December 1, 2014

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 9

declaration asserts only that he "went by to inspect the apartment," found that repairs were incomplete, and the unit was "unsanitary." Dkt. 51 at 2. No date is provided. In deposition, Mr. Tucker testified he returned to the Lam Bow unit after October 21 but could not recall the date. Dkt. 56 at 26. Moreover, Mr. Tucker's complaint concedes that on November 10, 2010 he "notified SHA that the unit remained unsanitary and mold infested *despite the repair of the ceiling collapse*." Dkt. 17 at 10 (emphasis added).

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp.*, 68 F.3d at 1221. As Mr. Tucker has failed to present sufficient evidence that, after SHA informed him the unit was habitable, (1) he returned to inspect the unit; and (2) the repairs were incomplete and/or the unit was mold-infested and unsanitary, the Court **GRANTS** SHA's motion for summary judgment on Mr. Tucker's constructive eviction claim.

### D.     Mr. Tucker's Termination from Section 8 Assisted Housing

Mr. Tucker's Amended Complaint contends defendants violated his constitutional due process and federal statutory rights under the United States Housing Act of 1937, the HUD regulations promulgated thereunder, and SHA's Administrative Plan by (1) denying his right to grievance procedures to address his complaints about mold and other unsanitary conditions in his leased Section 8-assisted unit; and (2) denying his right to grievance procedures prior to the defendants' termination of his Section 8 housing assistance.[5] Dkt. 17. The parties do not dispute

---

[5] Count 3 of Mr. Tucker's § 1983 claim asserts these rights were also violated when defendants denied his right to remain on the Section 8 housing assistance waiting list "upon rejection of an offer of project-based assistance." Dkt. 17. The Court addresses defendants' motions with respect to Count 3 separately below.

that violations of federal housing laws are actionable under 42 U.S.C. § 1983.[6]  *See Wright v. Roanoke Redev. & Hous. Auth.,* 479 U.S. 418, 429 (1987); *Goldberg v. Kelly,* 397 U.S. 254 (1970).  Rather, defendants contend they did not violate Mr. Tucker's rights because Mr. Tucker voluntarily relinquished his assisted tenancy, and as a consequence, he was not entitled to the protections and procedures he claims.

The implementing regulations regarding assisted housing contemplate that if a participating family prematurely terminates its assisted lease before the end of one year, the family relinquishes the opportunity for continued assistance.  24 C.F.R. § 983.261(d) (amending 24 C.F.R. § 983.260(d)).  The regulations also provide that the lease terminates "if the tenant terminates the lease."  24 C.F.R. § 983.256(f)(3)(ii).  The parties agree that beyond these regulations, state law governs the actions or events that constitute tenant-termination of an assisted lease.  *See* Dkts. 58, 59, 60.

Under Washington common law, voluntary relinquishment of a leased premises is implicated where (1) the tenant voluntarily quits with an intent to abandon the premises; and (2) the landlord resumes repossession.  *See Moore v. Northwest Fabricators, Inc*., 51 Wn.2d 26, 314 P.2d 941 (1957); *Yakima Valley Motors v. Webb Tractor & Equipment Co*., 14 Wn.2d 468, 128 P.2d 507 (1942).  Voluntary surrender of keys and departure from the premises is evidence of intent to terminate a tenancy.  *Schuss v. Rice*, 152 Wash. 538, 278 P. 428 (1929).  Under Washington statutory law, a landlord is empowered under these circumstances to repossess the premises by re-letting it.  *See* RCW 59.18.310 (when a tenant "defaults in the payment of rent

---

[6] In order to sustain a § 1983 claim, Mr. Tucker must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 11

and reasonably indicates by words or actions the intention not to resume tenancy," the tenant may be liable for the remainder of rent due under the lease agreement subject to the landlord's reasonable efforts to mitigate the tenant's damages); *see also* RCW 59.18.090 (tenant may properly terminate lease and move out if landlord fails to commence repairs within time limits prescribed in RCW 59.18.070 and remedy defective condition within a "reasonable time.")

Under Washington law, Mr. Tucker signaled his voluntary termination when he: (1) informed Ms. Wright he did not wish to return to the Lam Bow unit on October 26, 2010; (2) returned his keys to the Lam Bow unit on October 29, 2010; (3) failed to pay amounts due and owing under the lease agreement beyond his October 2010 rent; (3) remained in the Longfellow Creek unit after defendants informed him the Lam Bow unit was ready for reoccupation; and (4) sent his November 10, 2010 letter stating he did not want to return to the Lam Bow unit and wished instead to remain at the Longfellow Creek apartments. SHA repossessed the Lam Bow unit in mid-November when it released it to be rented by a new tenant. There is no evidence Mr. Tucker ever desired or attempted to reoccupy the Lam Bow unit.

Mr. Tucker argues the Lam Bow unit's lease agreement prescribes the singular manner in which he, as tenant, could terminate the lease. Dkt. 58 at 3 (stating lease agreement requires that a tenant must provide 20 days' written notice). This is a legal argument that cannot stand. Mr. Tucker's lease ran for a period of approximately one year. The lease termination clause provides that the lessee must give 20 days' written notice of intent to vacate after the lease term is up and once the lease automatically renews for successive one-month terms. Dkt. 51-1 at 2. This option to vacate with notice becomes available only "at the end of the Lease term," *i.e.*, after the specified lease term expires and the parties are operating on a month-to-month lease term basis.

*Id.* But to presume this means a tenant cannot *improperly* terminate a lease is absurd—rather, there is merely no option to terminate the lease *without consequence* unless the tenant complies with the 20 day notice requirement *at the end of the lease term*. Indeed, the very next paragraph provides that if the lessee vacates the premises before the expiration of the lease "with rent for the lease term still due, LESSEE shall be obligated for rental payments for the remainder of the term of the lease, or until the premises have been re-rented, whichever is less . . ." *Id.* Mr. Tucker's interpretation would bind a landlord under a year-long contract where, as here, a tenant abandons the leased premises and fails to pay rent.[7] Accordingly, as a matter of law, the Court finds Mr. Tucker voluntarily terminated his assisted lease and relinquished his tenancy at the Lam Bow unit.

With this in mind, the Court turns to Counts 1 and 2 of Mr. Tucker's § 1983 cause of action. Mr. Tucker makes no argument he was entitled to any grievance procedures even if the Court were to find he terminated his assisted lease. *See* Dkt. 50 at 14. Thus, his claims rely entirely on a finding that he did not self-terminate his tenancy. The Court has already determined Mr. Tucker voluntarily relinquished his tenancy. The Court now finds this posture necessarily forecloses his claims regarding withheld grievance procedures.[8]

---

[7] Mr. Tucker notes "SHA did not conduct any unlawful detainer proceedings to retake possession of the Lam Bow unit he leased." Dkt. 50 at 14. The statement presumes that a lease remains binding on a landlord unless the landlord prevails in an action for unlawful detainer, even when the tenant has no interest in remaining in possession of the leased premises. While the Court's opinion today in no way exempts a landlord's responsibilities under Washington law, the Court finds that Mr. Tucker's abandonment after three days of occupation, his express and implied refusal to reoccupy the unit, his relinquishment of his keys, and his failure to continue paying rent all indicate he relinquished his tenancy. *Cf.* RCW. 59.18.310. Mr. Tucker offers no authority to support the position that a tenancy continues unabated under such conditions.

[8] Moreover, the Court notes Mr. Tucker's response to defendants' summary judgment motions abandons Count 1 of his § 1983 cause of action.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 13

Section 8 assistance may be "project-based" or "tenant-based." 24 C.F.R. § 982.1(b). *Project-based* assistance programs are regulated by the provisions in 24 C.F.R. § 983. Project-based vouchers provide rent assistance for families living in specific housing developments or units. *Id*. *Tenant-based* assistance programs are regulated by the provisions in 24 C.F.R. § 982. A tenant holding a tenant-based voucher may select an apartment anywhere within the jurisdiction of the housing authority. 24 C.F.R. § 982.1(b). Unlike project-based vouchers, tenant-based assistance "is appurtenant to the tenant, pursuant to which the tenant may retain a rental subsidy when he or she moves to another Section 8 housing unit." *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1152 (9th Cir. 2011) (*citing* 42 U.S.C. § 1437f(o), (r); 24 C.F.R. §§ 982.1(b)(1), 982.314, 982.353, 982.355). There is no dispute that Mr. Tucker was a recipient of a project-based subsidy.

Mr. Tucker refused to return to the Lam Bow unit, but his project-based voucher was not transferable. Mr. Tucker contends his "intention was not to end his subsidy or participation in the Project-Based program—he simply did not want to be forced to live in that apartment." Dkt. 50 at 4. The Court might find such an argument persuasive if Mr. Tucker had presented a viable constructive eviction claim, as in that case, Mr. Tucker would have been entirely without fault in departing from the premises. But that is not the case. Mr. Tucker terminated his project-based assisted tenancy, and by doing so, relinquished his opportunity for continued assistance. *See* 24 C.F.R. § 983.261(d). As a result, he was no longer entitled to the due process rights and entitlements he claims.

Though it be little consolation, the Court is under no illusion that the legal scheme at play here is in any way accessible to those it is most meant to serve. The Court laments the fact that

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 14

had Mr. Tucker been timely advised of his continuing obligations under these admittedly vexing laws, the parties may very well have encountered a more satisfying outcome and avoided turning to legal action in pursuit of resolution. In this case, however, the law does not afford Mr. Tucker the rights and entitlements he seeks. Defendants' motions for summary judgment on Counts 1 and 2 of Mr. Tucker's amended § 1983 cause of action are **GRANTED**.[9]

E. **Mr. Tucker's Right to Retain His Place on the Waiting List**

Count 3 of Mr. Tucker's amended § 1983 claim contends defendants denied him his right pursuant to 42 U.S.C. § 1437f(o)(13)(j) to retain his place on the housing assistance waiting list after he rejected SHA's offer of the Lam Bow unit after the ceiling collapsed. Dkt. 17 at 9. The relevant portion of the statute provides:

> Any family that rejects an offer of project-based assistance under this paragraph or that is rejected for admission to a structure by the owner or manager of a structure assisted under this paragraph shall retain its place on the waiting list as if the offer had not been made.

42 U.S.C. § 1437f(o)(13)(j).

There is no dispute that Mr. Tucker inspected the Lam Bow unit on October 7, 2010, and completed an inventory and inspection form. He then signed the Apartment Rental Agreement for the Lam Bow unit on October 7, 2010, for a lease term beginning October 7, 2010 and ending September 30, 2011. He moved in to the Lam Bow unit on October 18, 2010. Three days later, a portion of the Lam Bow unit's kitchen ceiling collapsed. Mr. Tucker was temporarily relocated to the Longfellow Creek Apartments the next day and never reoccupied the Lam Bow unit.

---

[9] Because the Court finds Mr. Tucker was not entitled to the rights and entitlements he seeks and grants summary judgment on each of the three counts Mr. Tucker asserts as part of his § 1983 claim, the Court need not address SHA's argument on *Monell* liability.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 15

Mr. Tucker fails to provide—and the Court is not aware of—any authority suggesting that a tenant is entitled to "reject" an offer for project-based assistance at any time—even after the tenant has accepted the offer by signing a lease and moving in.  Drawing analogies from basic principles of contract law, it is the *acceptance* of an offer that generally forms a valid contract.  *See, e.g., Yakima Cnty. (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wash.2d 371, 388–89, 858 P.2d 245 (1993) (*quoting Pac. Cascade Corp. v. Nimmer*, 25 Wash.App. 552, 555–56, 608 P.2d 266 (1980)).  If the Court were to adopt Mr. Tucker's interpretation of 42 U.S.C. § 1437f(o)(13)(j), Section 8 landlords and the SHA would be in the unenviable position of constantly relocating tenants who, for any number of reasons, decided to "reject" their project-based assisted unit partway through their lease term.  No authority before the Court suggests the project-based regulations contemplated such a reality.

Count 3 of Mr. Tucker's amended § 1983 claim also alleges that when defendants denied him his right to retain his place on the waiting list, they "instead retaliated against Plaintiffs by placing them on a DO NOT RENT list until Plaintiffs agreed to waive all claims against SHA." Dkt. 17 at 9.  Fearn and Brosell assert that Mr. Tucker was no longer on a waiting list once he occupied the Lam Bow unit; when he voluntarily terminated his occupancy of the Lam Bow unit he did not automatically resume a place on the waiting list; and he was not restored to the waitlist.  Dkt. 42 at 18.  Mr. Tucker all but abandons this portion of his claim in his response, representing only that Ms. Brosell advised her staff on November 16, 2010 that there was no obligation to show Mr. Tucker any additional units and directed staff not to rent any unit to him "'unless you work with legal and he signs a release of any and all claims.'"[10]  Dkt. 50 at 6.  The

---

[10] In his cross-motion for summary judgment, Mr. Tucker draws separate legal conclusions from

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 16

issue before the Court is a legal one.  Under 42 U.S.C. § 1437f(o)(13)(j), Mr. Tucker was not entitled to retain his place on the waiting list after he failed to timely reject the offer of the Lam Bow unit.  There is no evidence that defendants' failure to place him on a waiting list was retaliatory.  Accordingly, as a matter of law, the Court **GRANTS** defendants' motions for summary judgment as to Count 3 of Mr. Tucker's amended § 1983 claim.

F.   **Mr. Tucker's Household Composition**

Fearn and Brosell take the additional position that Mr. Tucker was never entitled to occupy the Lam Bow unit because he was never qualified to receive a two bedroom unit.  Dkt. 42 at 18.  In making this argument, Fearn and Brosell rely on untenable grounds.  First, they assume that because Mr. Tucker's parenting plan designated his daughter's biological mother as "custodian of the child solely for purposes of all other state and federal statutes," Mr. Tucker was not entitled to claim a two-person household.  *Id.*  Second, they speculate that, had SHA known Mr. Tucker "was not legally entitled to claim custody over his minor daughter," it would not have permitted him to rent the Lam Bow unit.  *Id.* at 18-19.  The Court rejects the argument.

The parenting plan in place in fact provides that Mr. Tucker's daughter would "reside with both parents jointly."  Dkt. 45 at 25.  The Court is not aware of any authority dictating that SHA may only consider minor children as part of the household composition if the leasing tenant is designated as the child's legal custodian.  Additionally, there is no evidence before the Court suggesting Mr. Tucker's minor daughter did not in fact live with him.  The remainder of Fearn's and Brosell's argument is speculative and not appropriate for summary judgment.  Accordingly, summary judgment as to whether Mr. Tucker was qualified for a two-bedroom unit is **DENIED**.

---

these facts. Dkt. 50 at 18. As discussed below, however, the Court strikes the cross-motion as untimely.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 17

**G.      Mr. Tucker's Cross-Motion for Summary Judgment**

Mr. Tucker filed his response to defendants' summary judgment motions and his cross-motion for summary judgment in the same document on December 1, 2014.  *See* Dkt. 50.  The document was noted for December 5, 2014, the original noting date of defendants' summary judgment motions.  *See id*.  To the extent Mr. Tucker's cross-motion is not responsive to defendants' motions for summary judgment, the Court strikes the cross-motion as untimely.

On March 20, 2014, the Court entered its Order Setting Trial Date and Pretrial Schedule, requiring the parties to file their dispositive motions no later than October 29, 2014.  Dkt. 28.  The Court's subsequent orders extending discovery and continuing the noting date of defendants' summary judgment motions left unchanged all remaining provisions in the Court's original pretrial schedule.  *See* Dkt. 36; Dkt. 49.  Mr. Tucker did not timely move to extend the time by which dispositive motions must be filed, and therefore filed his cross-motion for summary judgment over a month late.

It is a "well established" principle that "[d]istrict courts have inherent power to control their dockets." *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc*., 146 F.3d 1071, 1074 (9th Cir. 1998)  (internal quotation marks omitted).  "'All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.'" *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004) (per curiam) (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc*., 244 F.3d 1128, 1136 (9th Cir. 2001)).  The Court may dismiss the case where a party has failed to comply with the Court's orders.  In this case, the Court concludes that striking the untimely cross-motion is the appropriate consequence.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, STRIKING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND STRIKING AS MOOT
STIPULATED MOTION TO EXTEND TIME - 18

**CONCLUSION**

In conclusion, defendants' are entitled to summary judgment on all claims and their motions for summary judgment, Dkt. 42; Dkt. 47, are **GRANTED**.  Counts 1, 2 and 3 of Mr. Tucker's amended § 1983 claim and his claim for constructive eviction are **DISMISSED** with prejudice.  Plaintiff's cross-motion for summary judgment is **STRICKEN** as untimely.  The Court **STRIKES** as moot the parties' Stipulated Order to Extend Time for SHA to Serve its Pretrial Statement, Dkt. 61.

The Clerk of Court shall send a copy of this Order to all counsel of record.

DATED this 19th day of December, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge